*235 OPINION OF THE COURT
Paula J. Hepner, J.
Respondent appears before this court on a petition charging him with false personation, a violation of Penal Law § 190.23. Under this statute, a person is guilty of this offense when “after being informed of the consequences of such act, he or she knowingly misrepresents his or her actual name, date of birth or address to a police officer or peace officer with intent to prevent such [person] from ascertaining such information.” At the conclusion of the trial, respondent’s counsel moved to dismiss the petition on two grounds: first, that the police officer did not adequately inform the respondent of the consequences of giving a false name, date of birth or address,[1] and second, that the law is unconstitutionally vague since it fails to properly define what the “consequences” are for violating the statute. It is the respondent’s contention that any warnings short of those required under Miranda v Arizona (384 US 436 [1966]) are insufficient to safeguard the respondent’s constitutional rights. Because the answers to “routine pedigree information” now form the basis for a criminal prosecution, that case law establishing a “pedigree exception” to the Miranda rule is no longer applicable.
The Presentment Agency argues that the full panoply of Miranda warnings is not required under the notice requirement of this statute since the Legislature did not specifically mandate it and because such warnings are not necessary for routine pedigree questioning, which is still good law because the administrative nature of the questioning has not changed.
Decision was reserved and counsel were directed to submit memoranda of law and due deliberation having been given to the points and authorities cited, the court makes the following determination.
THE RECORD
Officer Barbara Fischer stopped the respondent driving a 1985 Acura without taillights and asked the respondent his name and age. He told her his name (Travis Lewis) and his *236 age (16 years). Respondent had no identification for the officer to issue him a summons so she arrested him and took him to the precinct where she again asked his name, date of birth and address. Respondent repeated his name as Travis Lewis, gave a birth date of March 1, 1982 and an address of 390 Riverdale. Because the respondent looked too young, Officer Fischer said to him, “Are you sure you’re really 16, because if you’re not and you’re lying, there is a new charge called False Personation that you can be charged with.” After making this statement, Officer Fischer again asked the respondent his name, age and date of birth. The respondent’s parent or guardian was not present and he was handcuffed at the time. The respondent denied any of the information was false. After his fingerprints were processed, the respondent’s true identity (Travis S.), date of birth (Mar. 1, 1984) and address (392 Bristol) were ascertained, and he was charged with false personation in addition to unauthorized use of a vehicle in the third degree, which was the crime for which he was initially arrested.
THE STATUTE
Penal Law § 190.23 was enacted in May 1997 and became effective January 1, 1998. The elements of this crime are threefold: notice of the consequences of the act must be given, a knowing misrepresentation of one’s name, address and date of birth, and an intent to prevent a police officer from ascertaining such information. While the memorandum in support of this bill submitted by the New York State Senate speaks of a dual mens rea requirement, the first being “a specific intent to prevent the police officer * * * from performing an official function such as the booking process”, and the second being the “false pedigree information must be accomplished by the person in a knowing manner”,[2] the statute itself contains no limiting language in regard to the purpose for which an inquiry about a person’s name, address or date of birth can be made. There is no language in the statute which restricts an officer’s inquiry about a person’s name, address or date of birth to situations affording him or her a lawful right to inquire. Similarly, there is no language in the statute which connects the defendant’s misrepresentation to an intent to obstruct the performance of an official governmental function. The Practice Commentary to this statute acknowledges this omission from the bill that was *237 enacted by the Legislature, and suggests that such an addition “would be a meaningful restriction on the scope of this statute”.[3]
Although the lack of meaningful restrictions on the exercise of this power by the police may give rise to a constitutional challenge on overbreadth grounds, the respondent challenges the constitutionality of the statute on vagueness grounds for the reason that the statute only requires an individual to be informed of “the consequences” of giving an incorrect name, address or date of birth to the police which, he argues, is not the explicit standard required by People v Nelson (69 NY2d 302, 308 [1987]) to avoid arbitrary and discriminatory application. Challenges to a statute on vagueness grounds focus on whether a statute affords citizens fair warning of the specific conduct which is prohibited by law. The statute makes the notice an element of the crime but not an element which pertains to the forbidden conduct. Without this element, the police are prevented from charging this crime. As to the notice aspect of the statute, the Legislature appears to have determined that whether what is said by the police is “ ‘sufficiently definite “to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute” ’ ” (People v Nelson, supra, at 307) should be examined on a case-by-case basis.
In this case, Officer Fischer explained to the respondent that there is a new crime and if he did not tell her his correct name, address and date of birth, he could be charged with false personation in addition to the crime for which he was arrested. The Law Guardian argues that the respondent’s understanding of the meaning of the word “charged” is compromised by his age, his custodial confinement at the precinct, and the use of a vague word. There is, however, no evidentiary foundation in the record for any aspect of this position. On the facts of this case, the notice provided was sufficient, assuming the police need not give the respondent the formal warnings required by Miranda v Arizona (supra).
THE WARNINGS
The exclusionary rule created in Weeks v United States (232 US 383 [1914]) and made applicable to the States in Mapp v Ohio (367 US 643 [1961]) makes inadmissible, evidence obtained as a result of an illegal search or seizure. The *238 exclusionary rule’s remedy (suppression of evidence obtained in violation of Fourth Amendment rights) was applied to violations of Fifth Amendment rights in Miranda v Arizona (supra).
When a statement is made during a custodial interrogation, the Presentment Agency has the burden of showing that the respondent knowingly and intelligently waived those constitutional rights enunciated under Miranda. The function of the warnings required by Miranda is to counteract the coercive pressure of the custodial setting, therefore, those rights apply only to custodial interrogations. (People v Deary, 212 AD2d 960 [4th Dept 1995], lv denied 85 NY2d 971 [1995]; Matter of Darryl T., 210 AD2d 120 [1st Dept 1994], lv dismissed in part and denied in part 85 NY2d 954 [1995].) “Interrogation” has been defined as “express questioning * * * [or] words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response”. (Rhode Island v Innis, 446 US 291, 301 [1980]; People v Ferro, 63 NY2d 316 [1984], cert denied 472 US 1007 [1985]; People v Smith, 209 AD2d 1005 [4th Dept 1994], lv denied 85 NY2d 866 [1995].)
The Supreme Court has held that the asking of “routine booking questions” constitutes custodial interrogation, but that answers given in response to those questions fall outside the protection of Miranda if they are “reasonably related to the police’s administrative concerns.” (Pennsylvania v Muniz, 496 US 582, 601-602 [1990].) This exception is premised upon a belief that the need to protect defendants from incriminating themselves does not, for the most part, arise in noninvestigative inquiries.[4] The exemption for statements made in response to questions “designed to secure the ‘biographical data necessary to complete booking or pretrial services’ ” (United States v Minkowitz, 889 F Supp 624, 627 [ED NY 1995]) is not absolute (Thompson v United States, 821 F Supp 110, 120 [WD NY 1993]). It is a “limited exception” that does not necessarily “encompass all questions asked during the booking process.” (United States v Downing, 665 F2d 404, 406 [1st Cir 1981]; People v Rodney, 85 NY2d 289, 292 [1995], supra.) Questions, even if facially appropriate and characterized as “ ‘essentially administrative’ ” or “ ‘standard processing procedures’ ”, must be examined in the context of the totality of the circumstances to determine whether formal warnings are required and whether the answers remain subject to suppression if the ques *239 tions were likely to elicit an incriminating response. (United States v Minkowitz, supra, at 627.) In determining whether the challenged information falls within the exception, courts should “examine the circumstances to determine whether the police inquiries are those ‘normally attendant to arrest and custody'" (Scott v Strack, 1998 WL 636989, 2 [2d Cir, Apr. 6, 1998], 164 F3d 619 [unpublished opn]).
Respondent contends Officer Fischer’s questioning of him about his pedigree information should be denied its automatic exemption because Officer Fischer did not believe the respondent was 16, suspected he was lying, and asked the respondent his name, age, and date of birth again in order to elicit an incriminating response. According to the respondent’s view, Officer Fischer’s continued questioning subsequent to her founded disbelief of the respondent’s purported age transformed her questioning from administrative to investigatory.
The biographical questions were confined to “simple identification information of the most basic sort” (United States ex rel. Hines v LaVallee, 521 F2d 1109, 1113, n 2 [2d Cir 1975]), and were reasonably related to the performance of administrative duties connected with law enforcement. In no way did the questions pertain to Officer Fischer’s investigation into the crime for which she arrested the respondent nor any other previously committed crime. The purpose of the questions were those “normally attendant to arrest and custody”. (Pennsylvania v Muniz, supra, at 600.)
Turning to the warnings which are required by the statute, they are designed to encourage a respondent to tell the truth and prevent him from committing an additional crime. Under the false personation statute, the respondent’s first two false statements about his name, address and date of birth do not constitute a completed crime since no warning was given. The crime only became complete, after the warning was given and the respondent repeated the false information. Miranda and its progeny do not require formal warnings to prevent a person from committing a crime. The purpose of Miranda warnings is to prevent a person from becoming a witness against him/ herself during the investigation into one or more completed crimes. One cannot make an incriminating remark nor be a witness against oneself in regard to a crime that has not been committed.
The informational questions Officer Fischer asked this respondent did not exceed the scope of the “pedigree exception”. The warning she gave was not for the purpose of entrapping *240 the respondent into committing a crime or to induce him to perpetuate the lie she suspected he told. Rather, the warning she gave was for the salutary purpose of preventing him from doing so. While Officer Fischer did suspect a lie was told and had reason to believe a crime may be committed by the respondent, the warning contemplated by this statute is calculated to bring about a truthful answer and therefore the questioning is not “reasonably likely to elicit an incriminating response.” The pedigree questions do not lose their administrative character and become investigatory unless a crime has been committed and the answers are pertinent to culpability. Moreover, the exclusionary rule does not protect individuals from their own independent acts involving a calculated risk (People v Boodle, 47 NY2d 398, 404 [1979], cert denied 444 US 969 [1979]).
CONCLUSION
Accordingly, formal warnings pursuant to Miranda are not required, the pedigree exception to Miranda is retained and the warning given by Officer Fischer was sufficient to put the respondent on notice of the consequences of giving a false name, address or date of birth. The motion to dismiss the petition is denied. The Presentment Agency has proved the elements of the remaining count in the petition beyond a reasonable doubt and a finding is entered to false personation.

. Respondent’s counsel initially moved for a suppression hearing to challenge the admissibility of the statements the respondent made to the pedigree questions posed by the police officer. The motion for a hearing pursuant to People v Huntley (15 NY2d 72 [1965]) was denied since the Presentment Agency conceded that no Miranda warnings were given. The legal question about whether they are required was deferred until the conclusion of the trial so that the issue could be evaluated in the context of a complete record.

. 1997 McKinney’s Session Laws of NY, at 2072.

. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.23, at 182.

. New York has also incorporated a pedigree exception into its law regarding custodial interrogation. (People v Rodney, 85 NY2d 289 [1995]; People v Rodriquez, 39 NY2d 976, 978 [1976].)